UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN LANG,

                Plaintiff,          Civil Action No. 17-14105
                                          Honorable Linda V. Parker
                                          Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [18, 20]**

Plaintiff Dawn Lang ("Lang") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #18, #20), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Lang is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #20**) be **GRANTED**, Lang's Motion for Summary Judgment (**Doc. #18**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.     REPORT

### A.     Background

Lang was 47 years old at the time of her alleged onset date of February 7, 2014, and at 5'4" tall weighed approximately 220 pounds. (Tr. 323, 327). She completed high school but had no further education. (Tr. 328). Previously, she worked as a cashier and a gas station/convenience store clerk, before stopping work allegedly because of her medical conditions in February 2014. (Tr. 329). She now alleges disability primarily as a result of back, knee, and shoulder pain, as well as depression and anxiety. (Tr. 327).

After Lang's applications for DIB and SSI were denied at the initial level on September 17, 2014 (Tr. 191-98), she timely requested an administrative hearing, which began on June 21, 2016 (Tr. 44-118) and continued on October 6, 2016 (Tr. 119-58) before ALJ Sarah Zimmerman. Lang, who was represented by attorney Victor Galea, testified at both hearings, as did vocational experts ("VE") Susan Lyon and Richard Riedl. (Tr. 44-158). On February 1, 2017, the ALJ issued a written decision finding that Lang was not disabled under the Act prior to January 13, 2017, but became disabled on that date when her age category changed. (Tr. 19-37). On December 7, 2017, the Appeals Council denied review. (Tr. 1-5). Lang timely filed for judicial review of the final decision on December 20, 2017. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Lang's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See*

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Lang was not disabled under the Act prior to January 13, 2017. At Step One, the ALJ found that Lang has not engaged

in substantial gainful activity since February 7, 2014 (the alleged onset date). (Tr. 21). At Step Two, the ALJ found that she has the severe impairments of degenerative disc disease, status post right knee and left knee arthroplasty, status post rotator cuff repair, tobacco dependency/abuse, obesity, affective disorder, and anxiety disorder. (Tr. 21-22). At Step Three, the ALJ found that Lang's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 23).

The ALJ then assessed Lang's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations: can frequently lift and/or carry no more than ten pounds at one time; can frequently lift and/or carry articles like docket files, ledgers, and small tools; can stand and/or walk for up to two hours per eight-hour workday; can sit for up to six hours per eight-hour workday; can occasionally push or pull with the bilateral lower extremities, including operating foot controls; can frequently ambulate with a cane on level terrain with the assistive device held in the dominant right hand; can frequently reach overhead and handle with the bilateral upper extremities; can frequently balance; can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, and crouch, but can never crawl; can understand, remember, and carry out simple instructions; may be off task up to five percent of the workday in addition to normal breaks; and should work in small familiar groups of less than ten individuals. (Tr. 26).

At Step Four, the ALJ found that Lang is not capable of performing any of her past relevant work. (Tr. 35). At Step Five, the ALJ determined, based in part on testimony provided by the vocational experts in response to hypothetical questions, that, prior to January 13, 2017, Lang was capable of performing the jobs of assembler (28,000 jobs nationally), packager (20,000

jobs), and addresser (140,000 jobs).  (Tr. 36).  As a result, the ALJ concluded that, prior to January 13, 2017, when Lang's age category changed, she was not disabled under the Act.  (Tr. 37).  However, due to her age category change on January 13, 2017, and in light of the RFC, the ALJ determined that she was disabled as of that date.  (*Id.*).

      **C.**      **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ

or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.    Analysis**

In her motion, Lang argues that the ALJ erred in (1) weighing the medical opinion evidence, and (2) failing to account for her frequent absences from work to obtain medical treatment. (Doc. #18 at 6-21). Each of these arguments is addressed below.

*1.    The ALJ's Evaluation of the Medical Opinion Evidence*

Lang first argues that, in determining her RFC, the ALJ erred in giving only "little" or "partial" weight to the opinions of her treating physician, Mark Stewart, M.D. (*Id.* at 6-14). The well-established treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see, e.g.*, *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x

6

543, 552 (6th Cir. 2010) ("Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.").

Here, Dr. Stewart issued three opinions during the relevant time period. On September 9, 2014, Dr. Stewart completed a disability parking placard application, in which he indicated that Lang was temporarily disabled,[1] for a period not to exceed six months, due to her "total knee" replacement surgery. (Tr. 837). The ALJ gave this opinion partial weight, recognizing that there was necessarily some recovery time associated with Lang's March and June 2014 knee surgeries; however, she discounted this opinion in part because it "was a short-term restriction" and it did not speak to the overall functioning of Lang's knees. (Tr. 33).

Lang now challenges the ALJ's decision to discount Dr. Stewart's opinion because it was short-term in nature, claiming that the ALJ "conveniently ignored" the fact that the form required Dr. Stewart to choose between a "permanent" and a "temporary" restriction. (Doc. #18 at 11). This argument misses the mark, however, as the ALJ correctly noted that Dr. Stewart did in fact opine that Lang's disability as a result of her knee surgeries was only "temporary," and not expected to exceed six months. (Tr. 837). Moreover, the ALJ also discounted this opinion, in part, because it did not address the overall functioning of Lang's knees, noting that "physical therapy notes in the aftermath of [Lang's] procedures showed improvement in her right and left knee …." (Tr. 33). While Lang claims that the physical therapy notes on which the ALJ relied were "carefully select[ed]," the fact remains that these records demonstrate improvement in both

---

[1] As an initial matter, to the extent Dr. Stewart opined that Lang was disabled, such an opinion goes to the ultimate issue of disability, which is an administrative issue reserved to the Commissioner and, thus, is not entitled to any special significance. *See Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to [the doctor's] opinion because her conclusion that [the plaintiff] is totally disabled is a determination reserved to the Commissioner.").

of Lang's knees over time.  (Tr. 732 (50% improvement in bilateral knees), 750 (increased strength and range of motion in knees), 756 (50% improvement in knees since starting physical therapy), 773-74 ("progressing well" with 80% improvement in knees reported since beginning therapy), 885 (Lang reported that she was able to stand for longer periods while performing tasks such as dishes, cooking, and cleaning)).  Thus, the Court finds no error in the ALJ's evaluation of Dr. Stewart's September 2014 opinion.

Lang concedes in her motion that the ALJ's evaluation of her knee impairment is not the "main issue"; instead, she claims that "the ALJ's principal errors are in her disregard of the severity of [her] right shoulder impairment[.]"  (Doc. #18 at 12).  At issue, then, are two other opinions issued by Dr. Stewart – one in February 2015 and another in March 2015 – in which he opined that Lang was totally disabled due to her right shoulder.  (Tr. 809, 811).  The ALJ first discounted these opinions in part because "a finding of disability is one reserved to the Commissioner[.]"  (Tr. 33).  This was appropriate.  *See Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016).  The ALJ also discounted these opinions because they were inconsistent with other medical evidence of record.  Specifically, the ALJ noted that, around the time that Dr. Stewart issued these opinions, Lang apparently underwent a reverse shoulder arthroplasty.  (Tr. 30, 809).  The ALJ further noted, however, that by March 2016, her treating provider reported that her right shoulder was stable, and x-rays taken in March and August 2016 showed good postoperative appearance, with only mild diastasis of the right AC joint, and limited inspection of the right hemithorax was unremarkable.  (Tr. 33 (citing Tr. 1105, 1111, 1179)).

Lang challenges the ALJ's reliance on this evidence, arguing that the ALJ "fails to explain how a plain x-ray, taken a year and a half later … provides any basis to question Dr.

Stewart's opinions in February and March 2015." (Doc. #18 at 10). In support of this argument, Lang cites to several other medical records that purportedly refute the ALJ's finding that she retains the RFC to frequently reach overhead with the bilateral upper extremities. (*Id.* at 13). Specifically, Lang points to a July 17, 2014 examination in which Dr. Stewart noted that she could raise her right arm only 30 degrees; a September 4, 2014 MRI of her shoulder, which showed a large to massive chronic full-thickness rotator cuff tear; notes from a September 9, 2014 office visit, where Dr. Stewart found she was able to raise her right arm to only 90 degrees "with weakness"; and a finding on December 4, 2014 that she could lift her right arm only 30 degrees. (*Id.* (citing Tr. 552, 606, 638-39, 822-23)). The problem for Lang, however, is that all of these records pre-date both her November 2014 rotator cuff repair surgery, and her subsequent reverse shoulder arthroplasty in 2015; thus, they do nothing to undercut the ALJ's reliance on subsequent medical records, from 2016, that show improvement following these surgeries. All told, the ALJ gave good reasons, supported by substantial evidence, for discounting Dr. Stewart's 2015 opinions, and Lang has not demonstrated any error warranting remand.[2]

---

[2] Lang also challenges the ALJ's decision to give only partial weight to the September 16, 2014 opinion of state agency physician Sarah Bancroft-Treadway, M.D. (Doc. #18 at 14-17). Specifically, although the ALJ credited parts of Dr. Bancroft-Treadway's opinion, she did not adopt her opinion that Lang can never reach overhead with her right upper extremity. (Tr. 32, 168). In opining that Lang was so limited, Dr. Bancroft-Treadway noted that Lang suffered from right shoulder osteoarthritis and a "chronic rotator cuff tear." (Tr. 168). As noted above, however, Lang underwent surgery to repair her torn rotator cuff in November 2014 (Tr. 700-01); thus, it is not at all clear that Dr. Bancroft-Treadway would reach the same conclusion had she known Lang's shoulder had been surgically repaired. Regardless, even if the ALJ erred in discounting this aspect of Dr. Bancroft-Treadway's opinion, any such error is harmless because the evidence supports a conclusion that Lang was not disabled during the relevant period, even if she was unable to use her right arm for overhead reaching. As the Commissioner points out, at the first administrative hearing, VE Susan Lyon testified that an individual with the same RFC as ultimately found by the ALJ could perform work as a surveillance system monitor. (Doc. #20 at 8-9 (citing Tr. 26, 108-11)). That job does not require *any* reaching in *any* direction. *See Dictionary of Occupational Titles*, 379.367-010, 1991 WL 673244. Although the ALJ did not rely on this job when making her Step Five finding (Tr. 36), the VE's testimony regarding this

9

### 2.   *The Effect of Lang's Absenteeism*

Lang next argues that, in the disability determination, the ALJ erred in failing to account for her frequent absences from work to receive medical treatment. (Doc. #18 at 17-21). Specifically, she asserts that, after her alleged onset date of February 7, 2014, in addition to "regular office examinations" and "multiple, often overlapping, courses of physical therapy," she underwent "numerous surgeries and other medical procedures, as well as extensive imaging and other testing." (*Id.* at 17). According to Lang, the frequency of these visits for treatment and testing would have rendered her unable to work, as the VE testified that more than one unscheduled absence per month would be work preclusive. (*Id.* at 17, 21).

Social Security Ruling 96-8p provides that absenteeism due to treatment is something to be *considered*. *See Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *5 (July 2, 1996). Here, although the ALJ did not specifically discuss absenteeism in her decision, her detailed recitation of the medical evidence (Tr. 26-34) indicates her consideration of it. *See Kornecky*, 167 F. App'x at 508 ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).

Moreover, it is clear that the burden of proving disability ultimately rests with the plaintiff. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In support of her argument, Lang cites to four hospitalizations – three related to surgeries – over a

---

job nonetheless constitutes substantial evidence in support of the ALJ's finding of non-disability. *See Smith v. Comm'r of Soc. Sec.*, 1995 WL 469724, at *1 (6th Cir. Aug. 8, 1995) (VE's responses to hypothetical questions not relied on by ALJ are nonetheless substantial evidence in support of the Commissioner's "ultimate conclusion"). Thus, because there are jobs that Lang could perform even with a limitation to no overhead reaching with her right arm, a remand to determine whether any such jobs exist would be an exercise in futility. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game.") (internal quotations omitted).

two-year period. (Doc. #18 at 18-19 (citing Tr. 403 (hospitalized from March 26-29, 2014 for right knee partial arthroplasty[3]), 510 (hospitalized from June 2-8, 2014 for left knee partial arthroplasty), 1007-08 (hospitalized from September 17-22, 2014 for intractable back pain, nausea, vomiting, and diarrhea), 1005 (hospitalized from August 10-11, 2015 for left total knee arthroplasty with prosthesis removal)). But, each of these surgeries and attendant hospitalizations was a discrete, time-limited event, which does not demonstrate that she was disabled for twelve consecutive months during the relevant period, as is required. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). And, although Lang testified at the second administrative hearing that another right knee surgery was being considered (Tr. 62), this would have taken place during the period that she was already found disabled (Tr. 37). Thus, Lang simply has not shown that the time she spent in the hospital as a result of these surgeries over a two-year period rendered her disabled. *See, e.g., Robinson v. Astrue*, 2011 WL 6217436, at *6 (S.D. Ohio Dec. 14, 2011) ("[T]he record does not establish that Plaintiff will need the frequency of treatment for these impairments going forward that she experienced in the past.").

In addition to these hospitalizations, Lang cites to multiple follow-up appointments (for x-rays, MRIs, and injections) and physical therapy sessions, asserting that absences of this magnitude would preclude all work activity. (Doc. #18 at 18-21 (citing Tr. 552-54, 557-58, 606-07, 642-68, 696-704, 731-804, 808-09, 812-13, 882-952, 1062-1104, 1106-10)). But, Lang offers no evidence that she needed to attend these medical appointments during the work day, or

---

[3] Contrary to Lang's assertion (Doc. #18 at 18), it is not at all clear that the small bowel study and colonoscopy she underwent in February 2014 were performed in "preparation for" this knee surgery. Rather, the records indicate that these procedures were ordered to determine why she had lost a great deal of weight (Tr. 411, 413-14) and, thus, are of no particular relevance to Lang's allegations of disabling knee and shoulder impairments. *See Griffin v. Comm'r of Soc. Sec.*, 2017 WL 991006, at *2-3 (E.D. Mich. Mar. 15, 2017) (appointments and/or treatment must be related to conditions alleged to be disabling).

11

that they would have resulted in a full day off of work. *See Robinson*, 2011 WL 6217436, at *7 ("[T]here is no evidence that Plaintiff's need for treatment and therapy would necessarily require missing a full day of work."). To the contrary, the physical therapy records, at the least, show that each appointment generally lasted only approximately one hour (Tr. 731-804, 882-952), and, as the Commissioner points out, the websites for the facilities treating Lang indicate weekday hours which would have allowed her to schedule appointments outside of an eight-hour workday.[4] In other words, despite bearing the burden of establishing disability, Lang has failed to demonstrate that any absenteeism due to these appointments would have been disabling. As such, this argument fails.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #20**) be **GRANTED**, Lang's Motion for Summary Judgment (**Doc. #18**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: September 14, 2018　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[4] *See* http://auburnpt.com/auburn.html (Auburn PT, Auburn, MI location, listing hours Monday-Thursday 6:00 a.m. to 6:30 p.m.) (last accessed September 14, 2018); https://prsmichigan.com/ (Paramount Rehabilitation, Bay City, MI location, listing hours Monday-Thursday 7:00 a.m. to 7:00 p.m. and Friday 7:00 a.m. to 6:00 p.m.) (last accessed September 14, 2018).

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 14, 2018.

                                             s/Eddrey O. Butts
                                             EDDREY O. BUTTS
                                             Case Manager